### In the Interest of B.L.E. and J.W.B.,

v.

### Mary A. ELMORE, Juvenile Officer, Respondent.

### Appeal of Cora KLINE (Natural Mother).

### Nos. WD 38408, WD 38407.

Missouri Court of Appeals, Western District.

Feb. 3, 1987.

Patricia L. Hughes, Hale, Kincaid, Waters & Allen, P.C., Liberty, for appellant.

Max Von Erdmannsdorff, Von Erdmannsdorff & Zimmerman, Kansas City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and GAITAN, JJ.

LOWENSTEIN, Judge.

In this consolidated case the mother appeals from termination of her rights as a parent to her daughter born in 1975 and her son born in 1980. Section 211.442–211.-487, RSMo 1986. Since her appeal hinges on notice and right to counsel the facts will only be summarized.

The mother had the two children while in wedlock, but not fathered by either husband. Neither of the two father's have appealed. By age 29 she had gone through some six husbands. Her life has been nomadic, filled with drugs and crime. She has shown little ability or inclination of being a responsible parent. Custody of the children was taken from her about two years prior to this action which took away her parental rights based on abuse, neglect, failure to rectify the conditions which changed custody and failure to follow a court approved plan. These proceedings commenced while she was in prison—she was incarcerated at trial. She did not have counsel at trial but does on appeal.

The chronology of events is as follows:

1–83    Custody petition filed.
2–17–83  Custody hearing, children made wards of court and put in foster care.

5–83  Mother's forgery conviction in Kansas.

10–83  Felonious restraint of child when mother took a child from a hospital, guilty plea.

5–84  Mother to serve 60 days in jail.

7–84  Hearing to review foster care placement, notice to Mother "you have right to attorney, and if don't have one begin now to get one."

1–18–85  Charged stealing over $150.

2–1–85  Probation revoked.

9–85  This petition to terminate filed (Mother in jail).

10–85  Summons served on jailed mother for termination; hearing scheduled for November 21, 1985; summons contains no mention of court appointed counsel.

11–8–85  Court receives letter from mother asking for continuance to "get a witness and a lawyer ... It is hard to do anything where I am. I do not want a public defender unless I have to. I want to be responsible for my own lawyer getting paid. I am talking to a lawyer but will have to pay him first and will be out in a short time."

11–11–85  Letter to court from an attorney, while not representing mother, he asks for continuance until after December 15th (her proposed release from prison).

12–11–85  Letter to court from mother, "won't be out until 20th, would court tell her lawyer."

12–20–85  Released from jail in Chillicothe.

12–30–85  Attorney's letter saying he is not her attorney; He has not seen her since release on December 20. Knows case set January 23, 1986 and advised her.

1–14–86  Violation of parole, warrant issued March 6, 1986, then back to jail.

4–8–86  Court continues case to April 24, 1986 and on request from juvenile officer sets deposition of Tim Foltz (another child of the appellant, not involved in this case) in Des Moines, Iowa on April 16th. The father of the girl involved in this case, apparently abused Foltz, while they were all living in Des Moines. No notice of deposition given to mother. The order reads "this scheduling order relieves any party desiring to appear at and take the deposition from any further notice requirements ..."

4–14–86  Amended petition filed, adding ground of physical and sexual abuse committed on a sibling in household (Foltz) that mother should have known about.

4–15–86  Writ to Superintendent of Renz Correctional Facility to allow mother to come to trial.

4–16–86  Deposition of Foltz taken by designate of juvenile officer. No one else present.

4–22–86  Amended petition and summons containing notice of right to have attorney is served on mother at Renz farm. "You should make known to the court prior to the hearing your desire to have an attorney appointed for you." Hearing set for April 24, 1986.

4–24–86  Hearing without attorney court terminates mother on all four grounds. No mention is made about mother, who is in leg irons, proceeding without counsel. Mother presents no evidence and conducted no cross-examination. She was asked to testify during the juvenile officer's case, and, after first declining saying she didn't want to say anything without an attorney, she did testify. The Foltz deposition was introduced in evidence without objection.

4–25–86  Letter from mother saying didn't understand what went on at hearing. "I didn't want to say anything because I didn't have a lawyer."

5–7–86  Letter from mother wanting to appeal and she wants a lawyer.

5–7–86  Court appoints present attorney.

### RIGHT TO COUNSEL

Section 211.462.1, RSMo 1978, as agreed by the mother and the juvenile officer applies to this case and reads:

As soon as practicable after the filing of a petition and prior to the hearing, the parent or guardian of the person of the child shall be notified of the right to have counsel, and if they request counsel and are financially unable to employ counsel, counsel shall be appointed by the court. Notice of this provision shall be contained in the summons.

This statute, amended in 1985, but basically the same is now found in § 211.462.2, RSMo 1986 and reads:

The parent or guardian of the person of the child shall be notified of the right to have counsel, and if they request counsel and are financially unable to employ counsel, counsel shall be appointed by the court. Notice of this provision shall be contained in the summons.

Proceedings to terminate parental rights are of the utmost gravity and the terms of the statute must be strictly applied. *In the Interest of W.F.J.*, 648 S.W.2d 210, 214 (Mo.App.1983).

In this case, the original petition to terminate parental rights was filed in September, 1985. Contrary to the statutory mandate, the summons did not contain notice of the mother's right to appointed counsel under § 211.462. An amended petition, containing the first allegations of sexual abuse by the daughter's father and the knowledge of that abuse by the mother, was served on the mother on April 22, 1986, two days prior to trial. She was without counsel at the hearing. The court never advised appellant of her right to counsel at the hearing nor obtained a waiver by appellant of that right. Relying in part on the allegations of sexual abuse in the amended petition, the court terminated appellant's parental rights on all pleaded grounds.

The pivotal question here is if the failure to obtain counsel for the mother in these

circumstances constitutes reversible error. Guidance on this issue is provided by *In the Interest of B.M.P.*, 704 S.W.2d 237 (Mo. App.1986). In *In the Interest of B.M.P., supra*, the court sought to terminate parental rights. The petition, along with a summons, *containing* the notice required under § 211.462 was served upon the father four months before the termination hearing. The father, during these four months never requested counsel. The issue was whether the "trial court, at the start of the hearing, having received no prior request by appellant for the appointment of counsel," committed reversible error by not providing the father with counsel. *Id.* at 247.

The court noted that it was of paramount importance under § 211.462, that notice to an indigent parent of the right to counsel be included in the summons. As the court stated:

> [T]he only assurance that a parent will be aware of his right to counsel and of his right to the appointment of counsel if indigent is to provide that he receive written notice thereof. The summons is the logical place for such notice, as the summons is the official notification to the parents that the proceeding to terminate parental rights has been commenced. Moreover, the summons is served upon the parent at the outset of the proceeding. Consequently, including the notice regarding counsel in the summons affords the parent the greatest amount of time possible to obtain counsel prior to the hearing ... 704 S.W.2d at 246.

The court noted that in the circumstances of its case, where the father had notice of his right some four months prior to the hearing, "it was not asking too much of appellant ... to require that he make known to the trial court his desire to be represented by appointed counsel far enough ahead of the scheduled hearing date that (a) the trial court would have a reasonable opportunity to appoint counsel and (b) counsel would have adequate time to prepare." *Id.* at 248. The court held the father's request for counsel came too late to trigger the statutory appointment of

counsel requirement under § 211.462.2. *Id.*

In a cautionary note, the court stated that circumstances could exist where a parent could not reasonably be expected to respond to the notice about counsel in the summons. In these circumstances, the court should take additional action to ensure the parent had access to counsel. *Id.* at 249.

*In the Interest of B.M.P.*, can be distinguished from this case. First, in *B.M.P.*, the father received notice of his right to counsel four months before the termination hearing. Here, the mother received the statutorily required notice only two days before the hearing. Second, the father in *B.M.P.* never indicated any desire for counsel until the hearing, whereas in this case, the mother's desire to be represented by counsel was clearly indicated in her letters to the court prior to the hearing. Third, in *B.M.P.*, the court and father discussed the issue of father's appearance without counsel at the beginning of the hearing. Here, no such discussion occurred and so the mother was in no way apprised of her right to appointed counsel at the outset of the hearing. Finally, in this case, two days before the hearing and while the mother was in jail, she received the amended petition and summons containing the notice of her right to counsel. It is certainly not reasonable to expect the mother, from jail, to retain counsel and receive an effective defense in two days time. Rather, in the circumstances here the trial court was required to take affirmative steps to ensure the mother's right to counsel was protected.

In *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the Supreme Court determined that due process under the federal constitution does not always mandate, and there did not mandate, that an attorney be appointed for an indigent person in a proceeding to terminate parental rights. There are several factors in *Lassiter* that may distinguish that case from controlling here. In *Lassiter* no allegations of neglect

or abuse upon which criminal charges could be based existed, no expert witnesses testified, and no troublesome procedural or substantive points of law were presented. 452 U.S. at 33, 101 S.Ct. at 2162. In *Lassiter* the mother, then in jail, was being terminated as a parent solely for neglect. She had shown disinterest by not appearing at the prior custody hearing and she had not, as required by North Carolina law, filed an answer to the termination petition so as to put the case at issue.

■ Both *Lassiter* and *B.M.P., supra,* suggest that the circumstances of a particular case hold great weight in determining whether an indigent parent was unjustly denied the right to counsel in termination of parent rights proceedings. Here, the circumstances indicate that due process required the court to either appoint an attorney for the mother or obtain an affirmative waiver of that right. The court's failure to take either of these steps constitutes reversible error. The circumstances here do not constitute a waiver of counsel by the mother.

Examination of the circumstances here make this conclusion clear. The allegations of sexual abuse in the amended petition were a basis for the court's decision to terminate the mother's parental rights. Unlike the charges in *Lassiter,* these charges could be grounds for criminal prosecution of the mother. Yet the mother did not even know of these allegations until two days before the hearing. She also had no knowledge of what was contained in the Foltz deposition until it was introduced at trial. It violates fundamental fairness to force the mother to represent herself in this situation. Moreover, unlike *Lassiter* here the mother's desire for an attorney and her interest in the proceedings were clear. She tried to obtain private counsel and hoped to pay the attorney fees herself as the court was well aware. When that became impossible, it was not incumbent upon her to request an attorney at the start of the hearing. She obviously wanted an attorney, and it was incumbent upon the

*court* to either appoint counsel or obtain an affirmative waiver of her right to counsel.

Perhaps the most significant difference between this case and *Lassiter* is that Missouri has by statute in § 211.462 provided for appointment of counsel for indigent parents in these proceedings. The statute also requires the parents be notified of the right to counsel. In this case, the court not only failed to properly notify the mother of her right in the original petition and summons, but ignored the mother's several attempts to obtain legal counsel.

■ In *Lassiter,* the state gave no such absolute statutory right to counsel to an indigent parent. There the indigent parent could get counsel only by timely filing an answer to the petition. No such requirement exists in Missouri. Rule 114.03. In *Lassiter,* the court noted as of 1981 some 33 states provided, "statutorily for the appointment of counsel in termination cases," in line with "informed public opinion, concluding those standards were not being deemed as being less than enlightened and wise." 452 U.S. at 34, 101 S.Ct. at 2163. The Missouri legislature has set by statute the right of an indigent parent to have court appointed counsel in a parental termination case—that due process right may not be waived by merely showing up for court and proceeding to trial. A parent must make a clear and unequivocal waiver on the record of his or her decision to proceed to trial without a court appointed attorney. Under the circumstances of this case the mother did not waive her right to counsel, the result being a denial of her due process rights and a disposition of her rights without the aid of an attorney.

## SUMMONS AND SERVICE OF AMENDED PETITION AND NOTICE

Although the mother's not being represented calls for reversal, the matter of the summons and service connected with the amended petition need to be addressed. The original petition was filed on September 27, 1985. *See* § 211.487, RSMo 1986. The summons was served on October 8th

advising the mother to file a pleading to the termination petition prior to the hearing date of November 21, 1985. As will be recalled, this summons made no mention of the parent's right to appointed counsel. The amended petition, filed without leave of court, on April 14, 1986, was attached to a summons apparently designed for a custody matter. This summons merely states "that a petition has been filed and the juvenile is subject to the jurisdiction of the juvenile court ...", and the parent's "right to custody" may be affected. No mention was made of the parent's right to file a responsive pleading; the mother was ordered to appear for hearing on April 24, 1986. This summons did give notice of right to counsel and was served on the mother on April 22, 1986. The accompanying amended petition added the ground of abuse.

The upshot of all this is there is a serious question of whether the mother was adequately prepared, even without counsel for the new petition. Juvenile Rule 114.02 allows an amendment of a petition at any time with leave of court, "When the petition is amended, the court shall grant the parties additional time to prepare as may be necessary to provide a full and fair hearing." Although Rule 114.03 does not require a responsive pleading it does allow for an answer to be filed without motion at any time "prior to the hearing or at the commencement." Rule 115.04 states all pleadings subsequent to the original petition shall be served pursuant to Rule 43.01.

■ There is absolutely no way the mother could be expected to defend herself on a new charge served on her two days prior to hearing. Had this civil action not been covered under the Juvenile Rules, Rule 55.33(a) would have allowed her 10 days to respond after service of the amended pleading. To expect the mother to defend herself two days after service of this amended petition would result in a due process violation. *Matter of Trapp,* 593 S.W.2d 193, 198 (Mo. banc 1980).

### THE FOLTZ DEPOSITION

Serious doubt is cast on the deposition taken in Iowa without the mother's knowledge or representation. Since no trial testimony relates to abuse that deposition provided the only evidentiary basis for that ground to terminate. Unfortunately, the deposition was not with the transcript or legal file in this court.

The sad tale here is the mother, in prison and having been in prison from February 1985 to December 1985 and from at least March 6, 1986 through trial, and obviously without an attorney entering an appearance before April 24, 1986 hearing had to go to trial two days after receiving the amended petition which alleged an additional ground (abuse) for termination. Had counsel been in the case it could hardly be expected the cause could have been amended to add a count two days before trial and counsel be expected to be prepared. A sense of fair play and requirement of due process do not allow to stand a judgment where this parent had no attorney. It will not save the day for the juvenile officer of there being evidence to terminate on the grounds carried from the first petition. Under *these* circumstances, and at the very least, an unequivocal waiver should have been obtained from the mother prior to trial of her intention to proceed without an attorney. Otherwise, counsel should have been appointed far enough in advance of trial so as to make any defense of the mother's rights viable.

The case against the mother was overwhelming. She still had a right to counsel to rebut the termination petition. Section 211.462 afforded her the due process right to counsel in this case, and under the circumstances in this case she was denied this right. The lack of timely notice and the lack of counsel made it clear the person proceeded against would not know what was going on or be given a viable opportunity to defend. *In re Barger,* 365 S.W.2d 89, 97 (Mo.App.1963). On balance, a new trial, is a small price to pay for preserving the integrity of a fair trial. *State v.*

*Charles,* 572 S.W.2d 193, 200 (Mo.App. 1978).

No change is made in custody of these children, but the judgment of termination is reversed, and remanded for new trial at which the mother can retain counsel, or make a valid waiver to proceed pro se, otherwise the court is to appoint counsel to conduct her defense, all in sufficient time to allow preparation for trial.

All concur.